**Christopher R. YOUKER, Plaintiff,**

*v.*

**Edward E. SCHOENENBERGER and Town of Milton, Defendants.**

**No. 91 C 0737.**

United States District Court,
N.D. Illinois, E.D.

April 23, 1991.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiff Christopher Youker ("Youker") sues defendants Edward Schoenenberger ("Schoenenberger") and the Town of Milton ("Milton") (collectively, "defendants") for violation of his first amendment rights under 42 U.S.C. § 1983 (Count I), and for retaliatory discharge under Illinois law (Count II). Defendants move to dismiss the complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6).

**1.** On this motion to dismiss, the court accepts the well-pleaded allegations of the complaint as true and views those allegations in a light most

## BACKGROUND

The facts of this dispute are uncomplicated. Youker was employed as a deputy tax assessor for Milton. Complaint ¶ 4.[1] At the time, Milton employed Schoenenberger as a tax assessor for certain townships in DuPage County, Illinois. *Id.* at ¶ 3. On July 26, 1990, Schoenenberger discharged Youker, allegedly in retaliation for notifying tax assessors in neighboring townships that a number of real estate owners claimed illegal homestead exemptions. *Id.* at ¶ 6. These exemptions were improper because they were duplicative of homestead exemptions declared by the same owners on real estate in Milton. *Id.* Youker alleges that duplicative homestead exemptions are illegal under state and federal law. *Id.*

## DISCUSSION

■ The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990), quoting *Triad Assocs., Inc. v. Chicago Hous. Authority,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* — U.S. ——, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). The court must construe pleadings liberally; vagueness or lack of detail are insufficient grounds to dismiss. Fed.R.Civ.P. 8; *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985). However, the court need not ignore facts set forth in the complaint that undermine its claims, nor is the court required to accept legal conclusions. *American Nurses' Ass'n v. Illinois,* 783 F.2d 716, 724 (7th Cir.1986); *Capalbo v. PaineWebber, Inc.,* 694 F.Supp. 1315, 1318 (N.D.Ill.1988).

■ Generally, the federal system of notice pleading does not favor dismissal for failure to state a claim. *Gray v. Dane County,* 854 F.2d 179, 182 (7th Cir.1988). However, dismissal is proper if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the requested relief.

favorable to Youker. *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987).

*Illinois Health Care Ass'n v. Illinois Dep't of Public Health*, 879 F.2d 286, 288 (7th Cir.1989), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In addition, if the complaint fails to allege a necessary element required to obtain relief, dismissal is in order. *R.J.R. Services, Inc. v. Aetna Casualty and Sur. Co.*, 895 F.2d 279, 281 (7th Cir.1989). Defendants bear the burden of establishing the legal insufficiency of the complaint. *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir.1990).

## I. Proposed Amended Complaint

 Youker concedes that defendants raise several meritorious objections to his complaint. In his response, Youker attaches a proposed amended complaint, and asks the court to consider the proposed complaint in ruling on defendants' motion to dismiss. However, Youker did not seek leave to file his amended complaint as required by Fed.R.Civ.P. 15(a). Thus, the proposed amended complaint is not properly before the court. The defendants' motion to dismiss is directed solely at Youker's original complaint, and it is on that basis that the court will rule. Youker may file an amended complaint by May 9, 1991.

## II. Count I

In Count I, Youker alleges that his discharge constitutes a violation of his first amendment right of free expression. Count I is against Milton and Schoenenberger for compensatory and punitive damages. Youker also seeks equitable relief. Defendants assert that the claims in Count I for equitable relief and for punitive damages against Milton are improper. Youker concedes these points in his response to defendants' motion. Accordingly, the motion to dismiss the claim for equitable relief and the claim for punitive damages against Milton is granted.[2]

2. Initially, defendants argued that Count I should be dismissed in its entirety pursuant to the Local Governmental and Governmental Employees Tort Immunity Act, Ill.Rev.Stat. ch. 85,

## III. Count II

Count II is a state law claim for retaliatory discharge. Defendants submit that Youker has failed to state a valid claim.

### A. Retaliatory Discharge

 Illinois recognizes the tort of retaliatory discharge as a narrow and limited exception to the doctrine of employment-at-will. *Russ v. Pension Consultants Co., Inc.*, 182 Ill.App.3d 769, 131 Ill.Dec. 318, 321, 538 N.E.2d 693, 696 (1989). In order to maintain an action for retaliatory discharge, Youker must allege (1) that he was discharged, (2) in retaliation for his activities, and (3) that the discharge violates a clear mandate of public policy. *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill.2d 526, 116 Ill.Dec. 694, 519 N.E.2d 909, 911 (1986). Youker alleges that he was discharged in retaliation for informing neighboring tax assessors of illegal homestead exemptions. Thus, Youker satisfies *Hinthorn*'s first and second requirements. With regard to the third requirement, the complaint alleges that Youker was discharged for reporting to neighboring tax assessors that several real estate owners claimed illegal homestead exemptions. Youker alleges that these duplicative exemptions violate state and federal real estate and income tax laws, and thus his discharge for reporting these violations runs afoul of public policy.

The definition of a clearly mandated public policy is vague. According to the Illinois Supreme Court,

> public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. Although there is no precise line of demarcation dividing matters that are the subject of public policies from the matters purely personal, a survey of cases in other States involving retaliatory discharge shows that a matter must strike at the heart of a citizen's

¶ 2–201 ("the tort immunity act"). However, Youker represents that the defendants have withdrawn this theory of dismissal.

social rights, duties, and responsibilities before the tort will be allowed.

*Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 15–26, 421 N.E.2d 876, 878–89 (1981) (citations omitted). As Youker correctly points out, Illinois courts recognize that violations of federal tax laws impinge upon a clearly mandated public policy. *See Russ*, 131 Ill.Dec. at 322, 538 N.E.2d at 697; *Johnson v. World Color Press, Inc.*, 147 Ill.App.3d 746, 101 Ill.Dec. 251, 256, 498 N.E.2d 575, 580 (1986). The court in *Russ*, 131 Ill.Dec. at 322, 538 N.E.2d at 697, noted that,

> Illinois has an interest in the enforcement of federal tax laws because the falsification of federal tax records could also mean the falsification of state tax records, since the legislature has adopted the federal taxable income as the starting point for calculating the state corporate income tax.

Moreover, encouraging citizens to report their knowledge of wrongdoing is an important public policy. *Palmateer*, 52 Ill.Dec. at 17, 421 N.E.2d at 880. Public policy favors citizen crime-fighters. *Id.* The cooperation of citizens possessing knowledge of criminal conduct is essential to the effective implementation of that policy. *Id.* Here, Youker alleges that he was discharged for reporting violations of federal and state law. Thus, the alleged public policy is clear; private interests alone are not at stake. *Id.* at 16, 421 N.E.2d at 879. Accordingly, the complaint alleges a clearly mandated public policy.

Defendants argue that the public policy alleged in the complaint is outweighed by the discretionary authority vested in public officials. For this proposition, defendants rely exclusively on the recent Illinois Supreme Court decision in *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870 (1991). It is true that in some circumstances the interest in recognizing a claim for retaliatory discharge is outweighed by other concerns. It is on this basis that the *Fellhauer* court refused to recognize a claim for retaliatory discharge. However, for the reasons stated below, *Fellhauer* does not control the present case.

Reginald Fellhauer sued the City of Geneva and its mayor, Richard Lewis. Fellhauer, the former director of the Geneva electrical department, alleged that Lewis engaged in a series of acts that ultimately resulted in Fellhauer's discharge. During Lewis' campaign as a candidate for mayor of Geneva, Lewis asked Fellhauer to stall negotiations with an electrical company so that Lewis' opponent, the city's acting mayor, would not benefit from the successful completion of the pending contract. Fellhauer refused to interfere with the negotiations. Lewis won the election. Subsequently, Lewis solicited political contributions from local vendors to pay for the retirement of his campaign debt. Lewis asked Fellhauer to cooperate. However, Fellhauer refused to solicit campaign contributions from city vendors. Fellhauer was eventually fired and brought a claim for retaliatory discharge in state court against the city and Lewis. Fellhauer argued that he was discharged for refusing Lewis' request to delay contract negotiations, and for refusing to solicit contributions for Lewis. Fellhauer asserted that he would have committed official misconduct under § 33–3 of the Criminal Code of 1961, Ill.Rev.Stat. ch. 38, ¶ 33–3, if he complied with Lewis' wishes.[3] Thus, Fellhauer contended that the public policy against official misconduct was violated when he was fired.

The *Fellhauer* court noted that the tort of retaliatory discharge

> ... seeks to achieve a proper balance among the employer's interest in operating a business efficiently and profitably,

---

**3.** Under ¶ 33–3, a public officer or employee commits official misconduct when that person, in an official capacity:

(a) Intentionally or recklessly fails to perform any mandatory duty as required by law; or
(b) Knowingly performs an act which he knows is forbidden by law to perform; or

(c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority; or
(d) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law.

Official misconduct is a Class 3 felony.

the employee's interest in earning a living, and society's interest in seeing its public policies carried out.

154 Ill.Dec. at 654, 568 N.E.2d at 875, quoting *Palmateer*, 52 Ill.Dec. at 15, 421 N.E.2d at 878. The court explained that an employer may frustrate significant public policies by using his power of dismissal in a coercive manner. *Id.* at 655, 568 N.E.2d at 876. In these instances, a cause of action for retaliatory discharge is necessary to protect the public policy underlying the employee's activity, and to deter employer conduct inconsistent with that policy. *Id.*

The *Fellhauer* court concluded that compelling circumstances were not present. The court found that the interest in recognizing a cause of action for retaliatory discharge was outweighed by a separate concern articulated by the state legislature in § 3-11-1 of the Illinois Municipal Code, Ill.Rev.Stat. ch. 24, ¶ 3-11-1. Section 3-11-1 provides that,

> the mayor may remove any officer appointed by him, under this code, on any formal charge, whenever he is of the opinion that the interests of the city demand removal, but he shall report the reasons for the removal to the council.... If the mayor fails or refuses to report to the council the reasons for the removal, or if the council by a two-thirds vote ... disapproves of the removal, the officer thereupon shall be restored to the office from which he was removed.

The court found § 3-11-1 significant because it granted Lewis authority to discharge appointed officers whenever he believed that discharge was in the city's best interest. The court also noted that the requirement that the city council accept or reject the discharge protected Fellhauer's interest in earning a living, and provided an appropriate forum in which to consider the public policies at stake. Accordingly, the *Fellhauer* court found that

> [t]o expose a mayor to the possibility of suit for retaliatory discharge in instances similar to the one before us would, we believe, improperly inhibit the mayor's discretionary authority over appointments without significantly advancing

the public policy expressed in the official misconduct statute.

154 Ill.Dec. at 655-56, 568 N.E.2d at 876-77.

Here, defendants state in conclusory fashion that Schoenenberger's discretionary authority outweighs the public policy considerations alleged in the complaint. Defendants bear the burden of establishing the legal insufficiency of the complaint. *Yeksigian*, 900 F.2d at 104. However, their bare bones analysis of the circumstances surrounding Youker's discharge, and their failure to compare the facts of the present case with the facts in *Fellhauer*, do not satisfy this burden.

The facts in this case differ substantially from *Fellhauer*. Schoenenberger is not the mayor of Milton, and thus § 3-11-1 does not apply in the present action. Defendants do not identify an alternative statute that grants to Schoenenberger the broad range of authority possessed by Lewis in *Fellhauer*. Furthermore, the *Fellhauer* court attached great weight to the countervailing value of city council review of Fellhauer's discharge. The court reasoned that this review by publicly elected officials guaranteed that the interests of public policy were considered before action was taken against Fellhauer. No similar procedures are available to Youker. Thus, the protection provided by city council review is absent in this case. Without these procedural protections, Youker's interest in earning a living and society's interest in having its public policies carried out are not protected by any type of official review. In these circumstances, recognition of a cause of action for retaliatory discharge is necessary to vindicate the public policy of tax enforcement and compliance.

Accordingly, *Fellhauer* does not control in this action. The motion to dismiss Count II is denied.

**B. Tort Immunity Act**

 Defendants also move to dismiss Count II based upon their purported immunity under ¶ 2-201 of the tort immunity act. Under ¶ 2-201,

> [A] public employee serving in a position involving the determination of policy or

the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

The defendants baldly state that the tort immunity act protects them from liability in Count II, without offering any analysis to support their assertion. While immunity extends to negligent acts, it does not extend to willful and wanton conduct or to acts by public employees based on corrupt or malicious motives. Ill.Rev.Stat. ch. 85, ¶ 2–202 (1987); *Barth by Barth v. Board of Educ.*, 141 Ill.App.3d 266, 95 Ill.Dec. 604, 612, 490 N.E.2d 77, 81 (1986). Youker asserts more than mere negligence. The complaint clearly alleges that Youker was maliciously discharged by Schoenenberger in retaliation for reporting illegal tax exemptions. Complaint, Count II ¶ 1. Accordingly, defendants are not immune from the claims asserted in Count II. The motion to dismiss on these grounds is denied.

C. Punitive Damages

In Count II Youker seeks punitive damages against Milton. Defendants move to dismiss the claim for punitive damages pursuant to ¶ 2–102 of the tort immunity act. Paragraph 2–102 provides that,

> [a] local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party.

Youker concedes that Milton is not liable for punitive damages. Accordingly, defendants' motion to dismiss the punitive damages claim against Milton in Count II is granted.

CONCLUSION

The motion to dismiss is granted in part and denied in part. As to Count I, the motion to dismiss the claim for equitable relief and the claim for punitive damages against Milton is granted. The motion to dismiss Count I is denied in all other respects. As to Count II, the motion to dismiss the claim for punitive damages against Milton is granted. The motion to dismiss Count II is denied in all other re-spects. Plaintiff is granted leave to file an amended complaint conforming with this opinion by May 9, 1991.